# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

HEIDI SCHAEL,

                    **Plaintiff,**

-vs-                                      **Case No.  6:06-cv-343-Orl-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

                    **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

### I. BACKGROUND

**A.      Procedural History**

Plaintiff filed for SSI benefits on July 21, 2004.  R. 62-65.  She alleged an onset of disability on July 1, 2004, due to mental impairments from depression, suicidal ideations, attention deficit

hyperactivity disorder, violent outbursts, bipolar type two disorder, alcohol dependency, cannabis abuse, and polysubstance abuse.  R. 10.  Her application was denied initially and upon reconsideration. R. 33-35, 39-40, 70.  Plaintiff requested a hearing, which was held on August 2, 2005, before Administrative Law Judge Apolo Garcia (hereinafter referred to as "ALJ").  R. 139-167.  In a decision dated October 20, 2005, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.  R. 9-15.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 6.  The Appeals Council denied Plaintiff's request on January 13, 2005.  R. 3-5.  Plaintiff filed this action for judicial review on March 17, 2006.  Doc. No. 1.

### B.    Medical History and Findings Summary

Plaintiff, who was born in 1976, was 29 years old at the time of the ALJ's decision.  R. 62. She has a limited, ninth grade education and no past relevant work.  R. 85, 142.  An SSA worksheet completed on July 21, 2004 noted that Plaintiff had previously received SSI in 2002 and had mostly been homeless since that time.  R. 69.  Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of hearing voices, panic attacks, getting angry and hurting herself, experiencing violent outbursts, depression, and fatigue.  R. 70-74.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from bipolar disorder; attention deficit hyperactivity disorder and borderline personality disorder, with global assessments of functioning in July 2004 of 55 and in August 2004 of 65, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 10.  In making this determination, the ALJ found that Plaintiff's (and her witness's) testimony was generally credible but

the record failed to demonstrate an impairment or combination of impairments of disabling level of severity.  R. 11.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform at all levels of exertion but of an unskilled nature; that she was capable of well structured task activity and, although she disliked crowds, she was capable of appropriate interaction.  R. 12.  The ALJ concluded that Plaintiff's ability to perform work at all exertional levels was not significantly compromised by her non-exertional limitations.  R. 13.  After concluding that Plaintiff's additional limitations did not significantly erode the occupational base reflected by the Grids, the ALJ used section 204.00 as a framework to find Plaintiff not disabled, as defined in the Act, at any time through the date of the decision.  R. 13.

Plaintiff now asserts that the ALJ erred in (1) determining that her non-exertional mental limitations did not significantly compromise her ability to work and (2) not obtaining vocational expert (VE) testimony.  For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### A.    Plaintiff's mental impairments

Plaintiff contends that, although the ALJ found Plaintiff had severe mental impairments[1], he inconsistently last concluded that her ability to work was not significantly compromised by these non-exertional limitations in finding that she could perform work at all exertional levels. R. 13.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. Plaintiff contends that it is contrary to the requirements of the SSA regulations for the ALJ to conclude on one hand that Plaintiff's impairments are "severe," but on the other hand to conclude that they do not "significantly restrict" her ability to perform some basic work-related activities. The Commissioner contends that the inquiry at Step 2 is only a threshold

---

[1]It is undisputed that Plaintiff once suffered from a mental impairment that warranted her receipt of social security benefits. *See* R. 69. Plaintiff testified at the hearing that she stopped receiving benefits two years before when she was fleeing an abusive relationship. R. 148. There is also strong evidence that, prior to her recent pregnancy, Plaintiff was unable to work due to a combination of mental health problems and substance abuse (which was likely exacerbated by the mental health problems).

determination prior to making a determination as to a claimant's RFC. Once a finding is made that a claimant has a severe impairment which does not meet or equal the listings, the RFC finding is based on the totality of the record, with consideration of factors not relevant to a Step 2 analysis. *See, generally*, 20 C.F.R. § 416.945.

A finding of a severe impairment (which does not rise to the level of a listed impairment) does not automatically mean that the impairment "significantly restricts" her ability to perform work-related activities; it is up to the ALJ to make the determination whether Plaintiff's specific limitations restrict her ability. By definition, the Step 2 inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ engage in five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

Here, in making his RFC finding, the ALJ considered Plaintiff's specific severe mental impairments and found that they did not significantly compromise her ability to perform work at all exertional levels, but limited her to unskilled work.  R. 12-13.  The ALJ gave a detailed description of Plaintiff's most recent mental health treatment and Plaintiff's own testimony of her mental state:

> The claimant testified that her mental problems began at the age of 15 following a motorcycle accident in which she sustained a head injury and broken neck. She testified that she has no physical problems.  The claimant testified that she has auditory and visual hallucinations.  She has self-inflicted burn marks on her arm after hearing voices telling her to burn Satan out.  She has difficulty being around people and doesn't shop unless it's late in the evening when less people are around.  She has chased an individual with a butcher knife for trying to sell drugs to her ex-fiancé.  She is very angry, depressed and sad. She does a lot of crying.  She was Baker-Acted due to depression.  She goes for treatment monthly and goes to church weekly.  She lives in a mobile home with her 8 week old son.
>
> * * *
>
> The claimant's and witness's testimony are generally credible but the record fails to demonstrate an impairment or combination of impairments of disabling level of severity.  The claimant has had two psychiatric admissions since the alleged onset date, one where she was voluntarily admitted and one where she was Baker-Acted, both of which were of very short duration.  At the first hospitalization in July 2004 the claimant was diagnosed with bipolar disorder and ADHD, but her primary complaint was that of alcohol and illicit drug abuse and self-destructive behavior.  By the time of the claimant's discharge three days later she had improved with no thoughts of harming herself or others.  The claimant was also not delusional and reported no auditory or visual hallucinations.
>
> The claimant's second psychiatric admission [in August 2004] shows that she was drinking alcohol and smoking marijuana and feeling depressed with nightmares and auditory hallucinations.  The claimant's condition rapidly improved and she was discharged two days later with no suicidal or homicidal ideations; auditory or visual hallucinations.  The claimant also reported she was not depressed and indicated she would no longer drink alcohol while on medication. The claimant's global assessment of functioning on discharge was assessed as 65, which is consistent with mild symptoms.

In a routine medication evaluation on August 10, 2004, the claimant reported vague auditory hallucinations but improvement.  She also took it upon herself to cut down on her medication dosage.  She reported that she had no self-mutilating behavior since her last visit in July 2004.  On mental status examination the claimant was alert and oriented with normal psychomotor activity.  She still had vague auditory hallucination but there was no over psychosis.  The claimant was not seen again until October 2004 and at that time was out of medication.   She reported hallucinations but was controlling them to some extent.  The claimant's medication was re-started but in February 2005 she was taken off of them because she was pregnant and she did not want to take medication while pregnant.  This was not indicated to be a problem and the claimant was to be seen monthly.  At the next and last follow-up visit of record on April 20, 2005 the claimant was off medication and still having some auditory hallucinations but they were non command type and had calmed down.  The claimant also had emotional lability and anxiety but it is noted that her psychotic symptoms have reduced during pregnancy.  The claimant reported that she was not depressed and was not suicidal.

The record demonstrates that the claimant's symptoms in July and August 2004 were related to her alcohol and substance abuse.  The claimant's symptoms improved quickly and after the last psychiatric hospitalization in August 2004, she was assessed to have mild symptoms.  The claimant's symptoms are indicated to be stable after she stopped drinking and using drugs when she became pregnant.  Although the claimant continued to have some hallucinations they were not as severe.  The claimant's condition improved in less than one year and is indicated to be stable even without medication.

R. 11-12.  Based on all of the evidence, the ALJ then concluded that Plaintiff's mental limitations did not prevent her from performing all work activity.  R. 13.  In addition, one of the reviewing psychologists[2], Dr. Bee, in April 2005, opined:

[T]he most obvious and compelling diagnosis is borderline personality. . . . As is typically the case with a primary personality disorder and substance abuse, claimant stabilized quickly with treatment and sobriety. . . .  MSE upon discharge was benign and she reported no hallucinations.  At follow up on 7/28/04, claimant reported hallucinations in the context of applying for disability.  However, objective aspects of mental status were essentially benign and she does not exhibit clinical signs of decompensated reasoning or impaired reality testing.  Findings at subsequent out patient appointments are similar.  Still vaguely reporting hallucinations, but has not been hurting herself.  She threatened SI on the phone to

[2]The other reviewing psychiatrist, Dr. Vergara, could not reach a final opinion because he felt the evidence of record as of November 2004 was insufficient to determine the alleged impairment because Plaintiff failed to cooperate with the examiner.  R. 111.

psychiatrist on 8/25/04 and got herself Baker Acted, but once again stabilized sufficiently for discharge after only two days.  She stopped taking Seroquel (didn't like sedating effects) but stated that she was "controlling" the hallucinations.  the psychiatrist speculated that it was probably helpful that she has not been drinking.  Despite lack of meds, MSE reflects courteous interactions, spontaneous conversation and good social relatedness.  Intellect estimated average. . . . 2/22/05 RC states claimant now pregnant and off meds. . . .  Presuming continued sobriety, MER does not show a mental impairment which meets or equals listing.

R. 129.  Dr. Bee opined that Plaintiff had mild limitations in activities of daily living, maintaining social functioning and moderate difficulties in concentration, persistence and pace, in the ability to understand, remember, and carry out detailed instructions; the ability to set realistic goals or make plans independently of others; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods[3].  R. 113-114, 127.  In Dr. Bee's opinion, Plaintiff was limited, but not significantly limited, in virtually all other memory and concentration, social interaction, and adaptation categories.  R. 113-14.  "Claimant may lack the frustration tolerance for detailed learning and exhibit variable productivity, but she appears mentally capable of well structured task activity.  She dislikes crowds and may be prone to unstable personal relationships, but she is otherwise capable of appropriate interaction.  Goal setting assistance appears needed."  R. 115.

The Commissioner points to Plaintiff's testimony from the August 2, 2005 hearing that supports the ALJ's finding that her condition had stabilized and improved.  Plaintiff testified that she stopped drinking alcohol and using drugs when she got pregnant, and testified that she was focused on providing a stable environment for her infant; after giving birth, she started taking prescribed medications again, but in very low doses because she did not like the side effects, which include

[3]The Commissioner contends that the ALJ's finding that there was no evidence of repeated episodes of decompensation (R. 12) was an implicit rejection of Dr. Bee's assessment of moderate limitations in Plaintiff's ability to complete a normal workweek without interruption from psychologically based symptoms.  Doc. No. 17.

-8-

visual hallucinations.  R. 153, 156, 158-59.  Plaintiff also testified that she attended Alcoholics Anonymous meetings until her baby was born, was seeing her therapist every two weeks, and attended church weekly.  R. 157-58.  Since her August 2004 hospitalization, Plaintiff had had no other hospitalizations, and no more episodes of psychosis.  R. 131-32.  Although she had been prescribed medications, she was able to control her hallucinations without them and she stopped taking her medication entirely while she was pregnant, and she remained stable.  R. 132.  Plaintiff testified that she had no problems with the physical aspects of work, lifting, sitting, and standing.  R. 153.

The ALJ's determination that Plaintiff's condition had stabilized and she retained the residual functional capacity for work at all levels of exertion was based on substantial evidence.

### B.    Application of the grids

Plaintiff claims that the ALJ erred in applying the grids, because she suffered from non-exertional mental impairments, precluding the application of the grids and requiring VE testimony.

Once the ALJ finds that a claimant cannot return to – in this case, has no – past relevant work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *Foote*, 67 F.3d at 1558.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983)

(exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). The Eleventh Circuit has interpreted "significantly limits basic work skills" as limitations that prohibit a claimant from performing "a *wide* range" of work at a given work level. *See Foote,* 67 F.3d at 1559. In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Id.* It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559. If the ALJ determines that Plaintiff's nonexertional limitations do not significantly limit her basic work skills, then the ALJ may rely on the grids to determine if she is disabled. *See Phillips v. Barnhart,* 357 F.3d 1232, 1243 (11th Cir. 2004). If, however, the ALJ determines that Plaintiff's nonexertional limitations significantly limit her basic work skills (at any work level), then the ALJ must consult a vocational expert. *See id.*

Plaintiff argues that the ALJ should not have relied on the grids and should have consulted a VE because she suffers from non-exertional mental impairments. The Commissioner responds that the ALJ's reliance on the grids was appropriate because the ALJ had determined that the claimant's non-exertional limitations did not significantly limit her basic work skills. The ALJ found that the

degree of limitation in Plaintiff's social functioning was "mild" and her degree of limitation in concentration, persistence or pace was "moderate," and there was no evidence of repeated episodes of decompensation. R. 12. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform at all levels of exertion but of an unskilled nature; she was capable of well structured task activity and, although she disliked crowds, she was capable of appropriate interaction. R. 12. The ALJ specifically concluded that Plaintiff's ability to perform work at all exertional levels was not significantly compromised by her non-exertional limitations and did not significantly erode the occupational base reflected by the Grids. R. 13.

SSR 85-15 states that when a person's only impairment is mental, is not of listing severity, the final consideration is whether the person can be expected to perform unskilled work. The intellectual and emotional demands of unskilled, competitive, remunerative work include "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85-15 also states "that the potential job base for mentally ill claimants without adverse vocational factors is not necessarily large even for individuals who have no other impairments, unless their remaining mental capacities are sufficient to meet the intellectual and emotional demands of at least unskilled, competitive, remunerative work on a sustained basis."

Making this determination is difficult for an individual whose condition is unstable, a frequent circumstance for those suffering from mental illness. This difficulty is pronounced in this case because Plaintiff has gone through significant changes in her circumstances, personal behavior,

treatment, and prognosis.  These changes include getting away from substance abuse and dealing with new medications and side effects.

Through treatment and avoidance of drugs and alcohol, Plaintiff's functioning has greatly improved since her claimed onset date.  Yet, the record is clear that Plaintiff's condition is fragile and she continues to suffer from specific problems – *e.g.*, an aversion to crowds and hearing voices – and side effects of her medication – drowsiness and visual hallucinations – that could significantly erode the occupational base available to her.  R. 143, 149, 153.  Plaintiff testified that in a work setting around other people or dealing with the public she would experience anxiety and want to hide in a corner.  R. 154.  Coupled with the mild and moderate limitations noted by the evaluation, use of a VE is necessary for proper analysis of whether adequate employment opportunities are available to Plaintiff.  *Cf. Maciejewski v. Apfel,* No. 99 C 6231, 2000 WL 1788437, *9 (N.D. Ill. Dec. 5, 2000) (where the court found that when the plaintiff "often" had deficiencies in concentration, persistence and pace, in addition to other "moderate" and "slight" non-exertional limitations, substantial evidence did not exist to conclude that use of the grid alone was sufficient); *Zwick v. Apfel,* No. 97 Civ. 5140(JGK), 1998 WL 426800, *8 (S.D.N.Y. July 27, 1998) (holding that the ALJ erred in not obtaining vocational expert testimony when "moderate" limitations in daily living and social functioning could deprive the plaintiff of meaningful employment opportunities).  It may be that Plaintiff can still perform a significant number of jobs which exist in the national economy; however, the present record does not support that determination.

## IV.     CONCLUSION

The record in this case shows, as one treating physician described it, Plaintiff had a horrific abusive childhood.  R. 90.  To her credit, Plaintiff appears to have overcome many of the issues

plaguing her; however, Plaintiff continues to suffer from mental issues and medication side effects that could significantly erode the occupational base available to her, which must be addressed by a VE.  Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

      **DONE** and **ORDERED** in Orlando, Florida on January 17, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-13-